IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| PIETER SMEENK, | Case No. 1:17-cv-01466-CL |
| Plaintiff, | |
| v. | OPINION & ORDER |
| MICHAEL FAUGHT, and THE CITY OF ASHLAND, | |
| Defendants. | |

CLARKE, Magistrate Judge.

This case comes before the Court on Defendant's Renewed Motion for Judgment as a Matter of Law (#123) pursuant to Fed. R. Civ. Pro. 50(b). For the reasons set forth below, Defendant's motion is DENIED.

**BACKGROUND**

Plaintiff Pieter Smeenk was a licensed engineer on staff at the City of Ashland's Public Works Department for several years. Plaintiff filed this action on September 18, 2017, alleging

violations of free speech rights under 42 U.S.C. § 1983, retaliation for engaging in whistleblower activity under ORS 659A.203, and common law wrongful termination (#1). Prior to trial, the Court found that Defendant was entitled to summary judgment on the issue of common law wrongful discharge, and Plaintiff later voluntarily dismissed his free speech claim. Therefore, the only claim presented to the jury at trial was Plaintiff's whistleblower retaliation claim. For his whistleblower retaliation claim, Plaintiff sought $259,637 in economic damages, calculated from the time he was terminated in 2017 until he obtained other employment.

Defendant moved for judgment as a matter of law under Fed. R. Civ. P. 50(a) both orally and in writing on the basis that Plaintiff had not presented sufficient evidence to establish protected whistleblowing activity under ORS 659A.203. Both motions were denied by this Court. On March 21, 2019, the jury rendered a verdict in Plaintiff's favor in the amount of $259,637 for economic damages (#116). Judgment was entered on the verdict on March 26, 2019 (#118). Defendant now moves for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b).

Throughout this litigation, Plaintiff presented three instances of alleged protected activity that resulted in retaliation, with the first two instances occurring in 2010 and 2015, and the last instance occurring in 2017. On summary judgment, the Court held that Plaintiff's first two alleged instances of retaliation were barred by the applicable statute of limitations. *See* Opinion and Order at 9 (#51). However, the Court allowed testimony at trial concerning the 2010 and 2015 instances because they were relevant to Plaintiff's employment history, the state of mind of his employers in making their decision to terminate his employment in 2017, and Defendant's defense that Plaintiff had a history of performance issues and not following the proper chain of

command. The three instances of alleged whistleblowing activity and corresponding retaliatory responses are summarized below to provide context.

### 1. *2010 protected activity and retaliatory response.*

In 2010, Plaintiff's job description was revised to exclude any supervisory authority over other City employees. Plaintiff complained about the proposed reclassification to his supervisor Mr. Faught and to the City Administrator, but the reclassification proceeded over Plaintiff's objections. The first allegedly protected activity occurred thereafter when Plaintiff sent an email to the Oregon State Board of Examiners for Engineering and Land Surveying ("OSBEELS") for clarification regarding the lawfulness of his reclassification and the City's staffing arrangement. Mr. Faught allegedly retaliated against Plaintiff for contacting OSBEELS by issuing an oral reprimand with an accompanying memorandum to Plaintiff's personnel file. The memorandum states that the reprimand was for failing to acknowledge the finality of the City Administrator's decision and improperly circumventing the grievance process by soliciting the City Council.

### 2. *2015 protected activity and retaliatory response.*

In 2014, the Engineering Services Coordinator, Scott Fleury, applied to OSBEELS for an Oregon engineering license. Plaintiff completed a professional reference form and submitted it to OSBEELS as part of Mr. Fleury's application process. As reflected in meeting minutes dated August 2014, OSBEELS considered this reference form and noted that Plaintiff had identified "potential practice violations." Plaintiff alleged that Mr. Faught retaliated against him for this activity by issuing a non-disciplinary performance memorandum in February 2015.

### 3. *2017 protected activity and retaliatory response.*

On February 21, 2017, the Ashland City Council was scheduled to hold a meeting at City Hall. On the agenda was a consent item for approval to move forward with a project for a new

water treatment plant ("WTP project"). Mr. Fleury was acting as the WTP project leader. Plaintiff was not part of the WTP project. Upon learning that the engineering services contract for the WTP project was going to be considered at the meeting, Plaintiff made phone calls to the engineering firms that were not awarded the project to "confirm [his] assumptions." Def. Motion for Summ. Judgment, p. 7; Smeenk Depo 183:2-25; 184:1-14. Plaintiff arrived at the city council meeting shortly before it began and approached the City Attorney and City Administrator and advised them that if the WTP project was not pulled from the agenda pending further review, he would offer testimony to the City Council in opposition to its approval. Plf. Opp. to Motion for Summ. Judgment, p. 9. Mr. Faught ultimately agreed to remove the WTP project from the agenda. Plaintiff alleged that Defendant retaliated against him for raising his concerns to the City Attorney and City Administrator about the WTP project by placing him on administrative leave and ultimately terminating his employment on April 7, 2017.

## LEGAL STANDARD

A district court may set aside a jury verdict and grant judgment as a matter of law "only if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001); Fed. R. Civ. P. 50(a). When evaluating such a motion, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. Fed. R. Civ. P. 50(b).

A Rule 50(b) motion for judgment as a matter of law is not a freestanding motion. Rather, it is a renewed Rule 50(a) motion. Because it is a renewed motion, a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion. Thus, a party cannot properly "raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) (citing Fed. R. Civ. P. 50 advisory committee's notes to the 1991 amendments that "a post trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion."); *Murphy v. City of Long Beach*, 914 F.2d 183, 186 (9th Cir.1990) ("[Judgment notwithstanding the verdict] is improper if based upon grounds not alleged in a directed verdict [motion]."). When ruling on a renewed motion, the court may (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law. *Id.*

## DISCUSSION

I. **Plaintiff's burden at trial was to prove that he engaged in protected whistleblowing activity in 2017 and was wrongfully retaliated against for that activity.**

Although not argued in the briefs, Defendant asserted at oral argument on this motion that if the Court finds that Plaintiff did not prove that he engaged in protected whistleblower activity for any one of the three alleged incidents that took place in 2010, 2015, or 2017, then the Court must award Defendant a directed verdict and order a new trial or enter judgment in Defendant's favor. The Court has found no authority to support such an assertion. As confirmed in this Court's Summary Judgement Opinion and Order (#51), Plaintiff was barred by the statute of limitations from seeking damages for anything other than the alleged whistleblowing and retaliation that occurred in 2017. The Court allowed testimony at trial concerning the alleged

instances of whistleblowing and retaliation in 2010 and 2015 because they were relevant to Plaintiff's employment history, the state of mind of his employers in making their decision to terminate his employment, and Defendant's own defense that Plaintiff had a history of not following the chain of command and was terminated because of his history of performance difficulties. Plaintiff abided by the Court's ruling and did not seek damages or present evidence about damages that he may have incurred from the 2010 or 2015 whistleblowing instances, and instead sought damages calculated from the time he was terminated by the City of Ashland shortly after the 2017 whistleblowing incident to when he mitigated his damages by obtaining new employment.

Defendant also asserted at oral argument that the only retaliatory response alleged by Plaintiff was his ultimate termination in 2017, and therefore it was his burden to prove that the whistleblowing activity in 2010 and 2015 were connected to his termination. However, it is very clear from Plaintiff's Complaint, as well as from Defendant's own motion for summary judgement brief, that Plaintiff raised three distinct instances of whistleblowing that resulted in three distinct retaliatory responses. Plaintiff claimed that the retaliatory response he was subjected to in 2010 was in the form of an oral reprimand and accompanying performance memo (Plf.'s Complaint ¶ 14) and the retaliatory response he was subjected to in 2015 was another performance memo that placed him on a "performance plan" (Plf.'s Complaint ¶ 22). Plaintiff states in his Complaint that the City committed its "final retaliatory act against Mr. Smeenk by terminating his employment," and that it "relied on the previous retaliatory acts, including the oral reprimand and the Performance Memo" to justify its termination decision.

Therefore, because the first two instances of alleged whistleblowing activity and retaliation were barred by the statute of limitations, Plaintiff's burden at trial was to prove that he

engaged in protected whistleblowing activity in 2017 and was wrongfully retaliated against for that activity by way of his termination.

## II. Plaintiff presented substantial evidence for a reasonable juror to conclude that Plaintiff engaged in protected whistleblower activity in 2017.

Regarding the 2017 whistleblowing claim, Defendant renews its position that Plaintiff did not make legally sufficient "disclosures" under ORS 659A.203 for a reasonable juror to conclude that he engaged in protected activity. The jury was provided the following instructions regarding whistleblower retaliation and the definition of "disclosure":

> To establish a whistleblower retaliation claim, the plaintiff must prove by a preponderance of the evidence the following:
> (1) The plaintiff disclosed information that the plaintiff reasonably believed was evidence that a public employer:
>     (a) violated a federal or state law, rule, or regulation;
>     (b) engaged in mismanagement, gross waste of funds, or abuse of authority; or
>     (c) took an action resulting in substantial and specific danger to public health;
> (2) The defendant took or threatened to take disciplinary action against the plaintiff because of the plaintiff's disclosure; and
> (3) The plaintiff was damaged as a result.
>
> In order to prevail on his public whistleblower claim, plaintiff must prove that his whistleblowing was a "substantial factor" in the decision to take disciplinary action against the plaintiff. A "substantial factor" is one that made a difference in an employment decision; that is, the decision would not have been made without it. It need not be the only factor.
>
> A "Disclosure" under the whistleblowing statute is a report of wrongdoing to a person who was previously unaware of the information and includes a report of wrongdoing within an agency or department as well as to those outside an agency or department.

Defendant concedes that Plaintiff's reports made in 2017 were "of information that he reasonable believed to be evidence of mismanagement, gross waste of funds or abuse of authority." Def's Mot. at 10, ¶ 2. However, Defendant argues that Plaintiff did not make actual disclosures to City Attorney Dave Lohman and City Manager John Karns, and only approached

them to ensure the water treatment project agenda item was removed from the meeting so that he could have more time to discuss his concerns with his supervisors Mr. Faught and Mr. Fleury. *Id.* at 8. As such, Defendant argues that Plaintiff's complaints of mismanagement, gross waste of funds or abuse of authority were instead made to only Mr. Faught and Mr. Fluery, and such disclosures are not legally sufficient because Mr. Faught and Mr. Fluery were the "wrongdoers" and already knew of the conduct being complained of. The Court disagrees. Following the above instructions, which Defendant did not object to, and based on the evidence presented at trial, a reasonable jury could conclude that Plaintiff's reports to City Attorney Dave Lohman, City Manager John Karns, and even to his supervisor Mr. Faught about the water treatment plant were protected "disclosures."

At trial, Plaintiff introduced the City's "Notice of Potential Disciplinary Action" that was issued to Plaintiff shortly after the 2017 city council meeting, which states that Plaintiff "alleged three main deficiencies in the contracting process" in his "statements a few minutes before the council meeting to John Karns and Dave Lohman." Plf.'s Trial Exhibit 18 at 1, ¶ 3. The Notice then listed the three deficiencies: (1) the failure to "allow for consideration of other, potentially more suitable water treatment plant sites"; (2) the failure to "carefully evaluate and address any adverse project impacts" that might arise from the contractor's loss of a key employee; and (3) the failure "to competitively procure the engineering work on two of the four projects in the proposed contract." *Id.*

The trial testimony of both Mr. Karns and Mr. Lohman support Plaintiff's assertion that he raised these three concerns to Mr. Karns and Mr. Lohman at the city council meeting. Mr. Karns testified that Plaintiff approached him at the council meeting and "mention[ed] he was concerned about the site, that there may have been preferable sites" and that he "brought up a

concern about . . . one of the employees of the contractor." Trial Testimony of John Karns at 16:24-17:2. Mr. Lohman testified that immediately prior to the Council session, Plaintiff "asked about how he could go about testifying on a matter that was on the consent agenda" and that he was "concerned about the procurement process . . . the whole contracting process for this agenda item." Trial Testimony of Dave Lohman at 16:8-13 & 17:5-11. In addition, Plaintiff presented the follow-up letter that he sent to Mr. Karns and Mr. Lohman three days after the council meeting where he further detailed his concerns with the water treatment project. Plf.'s Trial Exhibit 15; Trial Testimony of Smeenk at 57:18-58:6.

Moreover, based on Mr. Faught's trial testimony, a reasonable juror could conclude that Mr. Faught was not aware of the alleged unlawful conduct and was not a "wrongdoer," making Plaintiff's statements to him about the water treatment project a legally sufficient "disclosure" under ORS 659A.203. At trial, defense counsel asked Mr. Faught what his "actual direct involvement" in the water treatment project was leading up to the 2017 council meeting. Suppl. Lundberg Decl., Ex. A at 59:17-19 (#139). In response, Mr. Faught testified that, aside from "reviews from Mr. Fleury about where they were," a "quick" review of the council communication, and walking into one meeting "to see how the energy was going," it "was completely Mr. Fleury's project." Id. at 59:20-60:1. Mr. Faught testified that he was "pretty confident that Mr. Fleury had followed the QBS process" because "he knew that [Mr. Fleury] had worked with legal through the whole process," but he did not say that he had actually reviewed the QBS process himself. Id. at 64:6-8. Mr. Faught further testified that he was "surprised that [Plaintiff] had issues with the site" when Plaintiff raised his concerns at the 2017 council meeting.

Based on the evidence presented at trial, a reasonable juror could find that Mr. Karns, Mr. Lohman, and Mr. Faught were all persons in supervisory positions that were previously unaware of the reported wrongdoing, and therefore conclude that Plaintiff made a protected "disclosure" under ORS 659A.203.

## ORDER

For the reasons stated above, Defendant's Renewed Motion for Judgment as a Matter of Law (#123) is DENIED.

It is so ORDERED and DATED this 24 day of July, 2019.

_____
MARK D. CLARKE
United States Magistrate Judge